## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| EUGENE LARON JOHNSON, | Civil No. 22-1299 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| S. HOLZAPFEL | |
| Defendant. | |

Eugene Laron Johnson, 855 West 7th Street, St. Paul, MN 55102, *pro se* plaintiff.

Anna L. Veit-Carter, **MINNESOTA ATTORNEY GENERAL'S OFFICE,** 445 Minnesota Street, Suite 1400, St. Paul, MN 55101-2128, for defendant.

Plaintiff Eugene Laron Johnson brings this action under 42 U.S.C. § 1983 alleging that medical staff at Minnesota Correctional Facility – St. Cloud ("MCF-St. Cloud) have been deliberately indifferent to his medical needs. Johnson requested monetary damages and injunctive relief. Following dismissal of several of Johnson's claims and several of the defendants, defendant Nurse Holzapfel now moves for summary judgment on the remaining claim for deliberate indifference. Because Johnson has failed to exhaust his administrative remedies, his claim is barred by the Prison Litigation Reform Act and procedurally defaulted, so the Court will grant Holzapfel's motion and dismiss Johnson's claim with prejudice.

**BACKGROUND**

On April 6, 2022, Johnson underwent intake screening and processing after arriving at MCF-St. Cloud, a process required for all inmates. (Decl. Jean Wipper Supp. Mot. Summ. J. ("Wipper Decl."), Ex. C at 10, Apr. 20, 2023, Docket No. 75-1; Decl. Stephanie Holzapfel Supp. Mot. Summ. J. ("Holzapfel Decl."), ¶¶ 4, 7, Apr. 20, 2023, Docket No. 77.) Nurse Stephanie Holzapfel conducted Johnson's medical, dental, mental health, and sexual assault risk assessment screenings pursuant to Department of Corrections ("DOC") Policy 202.040.[1] (Holzapfel Decl. ¶ 7.). On April 23, 2022, Johnson filed a kite[2] regarding his intake screening and alleged that that a "[n]urse [n]amed Susan" made him wait last to be seen during the intake process, that she showed his medical file to another inmate, and that she denied him a bottom bunk restriction. (Decl. Susan Dahl ("Dahl Decl."), Ex. F at 1, Apr. 20, 2023, Docket No. 76-1.) Johnson filed a second kite the following day, alleging that he had complained to Health Services Supervisor April Zamora about his allegations that "Nurse Susan" showed his medical records to another inmate. (Dahl Decl., Ex. G at 2.) Nurse Susan Dahl, the only nurse in that department whose name matched the description, followed up with Johnson in response to his kites on or around April 25,

---

[1] The Minnesota Department of Corrections Policies are available at https://policy.doc.mn.gov/DOCPolicy/ (last accessed Aug. 4, 2023).

[2] A "kite" is a form used by offenders to make requests or communicate with facility staff. (Wipper Decl., Ex. A. at 1.)

2022. (Dahl Decl. ¶ 5.) During that conversation, Johnson informed Nurse Dahl that he had no issue with her since she was not the nurse he saw during his intake. (*Id.*)

On May 12, 2022, Johnson submitted a grievance pursuant to the DOC Policies. (Wipper Decl. at ¶ 6; Ex. C at 10.) On May 17, 2022, Johnson received a memorandum notifying him that he had failed to file his grievance within 30 calendar days from the date the incident occurred, failed to attach the related kite forms, and included more than one issue on his grievance form against policy. (*Id.* at ¶ 7, Ex. D at 12.)

Johnson mailed his Complaint to the Court on May 9, 2022, prior to filing his grievance. (*See generally* Compl., May 13, 2022, Docket No. 1.) He later filed an Amended Complaint, bringing claims for obstruction of justice, medical malpractice, cruel and unusual punishment, intentional infliction of emotional distress, and discrimination. (Am. Compl. at 4, June 23, 2022, Docket No. 11.) Following defendants' motion to dismiss, the Court dismissed all claims against defendant MCF-St. Cloud as barred by Eleventh Amendment immunity and against defendant A. Zamora for failure to plead sufficient facts to bring such claims, and Johnson's claims against defendant Holzapfel for discrimination, obstruction of justice, his state-law claims, and his request for injunctive relief. (R. & R. at 16, Nov. 10, 2022, Docket. No. 56; Order, Dec. 15, 2022, Docket No. 60.) Defendants MCF-St. Cloud and A. Zamora were subsequently terminated from the action, leaving Johnson's remaining claim against Holzapfel for deliberate indifference. (*Id.*) On April 20, 2023, Holzapfel brought this motion for summary judgment on the deliberate

indifference claim. (Mot. Summ. J., Apr. 20, 2023, Docket No. 72.) Johnson failed to respond to Holzapfel's motion.

**DISCUSSION**

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* at 252.

When deciding a summary-judgment motion, courts liberally construe pro se pleadings and hold them to a less stringent standard than those drafted by

attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, a pro se plaintiff's claims cannot survive a summary-judgment motion unless he has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Arguments and statements in briefing are not evidence and cannot create issues of fact for purposes of summary judgment. *See Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 467 n.6 (8th Cir. 2002).

## II. PRISON LITIGATION REFORM ACT

To begin, the Court notes that Plaintiff Johnson has not responded to Holzapfel's summary judgment motion. Thus, Johnson has not raised any issues of material fact in response to Holzapfel's arguments. Nonetheless, Holzapfel is not immediately entitled to having her motion granted on the deliberate indifference claim. Instead, "[e]ven if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Interstate Power Co. v. Kan. City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993).

Turning to the substance of Holzapfel's arguments, she asserts that Johnson failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing his Complaint in federal court and thus the remaining claim should be dismissed. Holzapfel further argues that Johnson failed to utilize the administrative

-5-

remedies while available under the DOC's grievance procedure, he has procedurally defaulted, and his claim should be dismissed with prejudice.

The PLRA requires prisoners to exhaust administrative remedies before bringing a suit regarding prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought [by a prisoner] with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."). A suit regarding prison conditions includes both claims about "general circumstances" of confinement and claims regarding "particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Administrative exhaustion is required regardless of the nature of the relief the prisoner seeks. *Id.*

The PLRA does not specify an exhaustion procedure. Rather, a prisoner must follow the grievance procedure of the facility where they are incarcerated to exhaust their claims. *Jones v. Bock*, 549 U.S. 199, 218 (2007). At the time of Johnson's alleged incident, Minnesota DOC Policy 303.100 set forth a grievance procedure for resolving prisoner complaints. (Wipper Decl. ¶ 4, Ex. A.) The grievance procedure consists of three steps. (Wipper Decl., Ex. A.) First, an inmate must attempt to informally resolve any issues by filing a kite and, if necessary, proceeding up the Facility Chain of Command, which is a list of facility staff to whom offenders must address their concerns. (*Id.* at 1–2.) Second, if the inmate's attempts at resolving an issue informally are unsuccessful and a response has been received by the last staff person identified in the Facility Chain of Command, the

inmate has to submit a facility grievance to the facility's grievance coordinator or—if he has received threats to his physical safety or well-being (or could establish that he would be in danger if his complaint were to be known at the facility)—directly to the department grievance appeal authority at the DOC's central office. (*Id.* at 2–3.) Third and finally, if the inmate is not satisfied with the response from the facility grievance authority, he can submit a grievance appeal to the DOC central office. (*Id.* at 4–5.)

As part of his first step to properly exhaust his claim, Johnson had to informally resolve any issues by filing a kite with each member of the appropriate Facility Chain of Command until he had received a response by the last staff person identified in the Facility Chain of Command. It is unclear whether Johnson properly completed the first step. He filed two kites shortly after the April 6 incident on April 23 and 24 but does not appear to have filed up the chain of command after the nurse who appeared to be named in the kite followed up with Johnson to resolve his issues. (Dahl Decl., Ex. F at 1, Ex. G at 2.) Once Johnson informed the named nurse that she was not his intake nurse and thus not the subject of his kite, Johnson would have still been required under DOC policy to follow the Facility Chain of Command. The Court is unable to discern from the record whether Johnson successfully completed this first step.

However, even assuming Johnson properly completed the first step, the record demonstrates that Johnson never completed the second step because he failed to timely submit his facility grievance. The applicable DOC grievance procedure requires facility

grievances to be submitted "within 30 calendar days of when the issue most recently occurred and no sooner than seven calendar days of when [the inmate] sent a kite trying to resolve the issue." (Wipper Decl., Ex. A at 3.) Here, the incident took place on April 6, but Johnson did not submit his facility grievance until May 12—36 days from when the incident occurred. "The PLRA exhaustion requirement requires **proper** exhaustion . . . [which] demands compliance with an agency's deadlines and other critical procedural rules." *King v. Dingle*, 702 F. Supp. 2d 1049, 1067 (D. Minn. 2010) (internal citation omitted) (emphasis in original); *see also Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, **including deadlines**, as a precondition to bringing suit in federal court.") (citations and quotations omitted) (emphasis added). Thus, because Johnson failed to meet the applicable deadline for filing his facility grievance, he failed to properly exhaust his administrative remedies and cannot sustain a § 1983 action. *See Pritchett v. Warden of ERDCC*, No. 4:13-CV-1406, 2015 WL 5124457, at *3 (E.D. Mo. Aug. 31, 2015) ("The PLRA exhaustion requirement requires compliance with the agency's deadlines.  A prisoner's failure to adhere to the filing deadlines deprives him of his right to bring a § 1983 action in federal court.").  There is also no evidence that suggests Johnson completed the third step: appealing to grievance to the DOC central office.

Johnson may have believed he had already exhausted all his administrative remedies, but the record is unclear as to even the first step and Johnson never set forth

an explanation because he failed to respond to Holzapfel's motion. Even assuming Johnson satisfied step one of the DOC's applicable grievance procedure, viewing the allegations in the light most favorable to Johnson, this Court concludes that Johnson did not properly complete steps two or three and therefore failed to exhaust his administrative remedies.

Lastly, the Court addresses Holzapfel's argument that Johnson's claim should be dismissed with prejudice. While "a failure to exhaust typically warrants only dismissal without prejudice," prejudice may be warranted when an offender fails to file a grievance within the time allowed by DOC policy. *See Allen v. Jussila*, No. 08–6366, 2010 WL 3521934, at *9 (D. Minn. Aug. 5, 2010) ("[B]ecause Allen can no longer exhaust his claims [due to the expiration of the deadline for appealing his prison grievances], he has procedurally defaulted on them and his suit is precluded forever and must be dismissed with prejudice"), *aff'd* 430 F. App'x 555 (8th Cir. 2011). Here, as already stated, the applicable DOC Policy required that an offender file a facility grievance within 30 days of the occurrence of the issue being grieved. (Wipper Decl., Ex. A at 3.) It also required that a grievance appeal be submitted within 21 calendar days of the date the facility grievance authority signed the response to the facility grievance. (*Id.* at 5.) Johnson missed both deadlines. Accordingly, this Court concludes that Johnson's claim is procedurally defaulted. It will therefore grant Holzapfel's motion for summary judgement and dismiss Johnson's action with prejudice.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Holzapfel's Motion for Summary Judgement [Docket No. 72] is **GRANTED** and this action is **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 7, 2023
at Minneapolis, Minnesota.

*John R. Tunheim*
JOHN R. TUNHEIM
United States District Court